VIACOM, INC., Plaintiff,

v.

**The UNITED STATES, Defendant.**

**No. 01–79C.**

United States Court of Federal Claims.

May 8, 2006.

Thomas A. Lemmer, Denver, CO, for plaintiff. Herbert L. Fenster and Christopher Bouquet, of Washington, DC and Eric J. Sobczak, Pittsburg, PA, of counsel.

C. Coleman Bird, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen, for defendant. Gregory T. Allen, Defense Contract Management Agency, Manassas, VA, of counsel.

Karen L. Manos, Washington, DC, for Amicus Curiae Raytheon Company.

## OPINION

FIRESTONE, Judge.

Pending before the court are the United States' ("the government's") and Viacom, Inc.'s ("Viacom's" or "plaintiff's") Cross Motions for Partial Summary Judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"). For the reasons that follow, the court **GRANTS–IN–PART** and **DENIES–IN–PART** the government's motion and **GRANTS–IN–PART** and **DENIES–IN–PART** Viacom's motion.

## BACKGROUND

This case is another in a series of cases involving the scope and application of both the original Cost Accounting Standard ("CAS") 413.50(c), 48 C.F.R. § 9904.413–50(c)(12) (1994) ("original CAS"), which was promulgated in 1977, and the revised CAS

413.50(c), 48 C.F.R. § 9904.413–50(c)(12) (2006) ("revised CAS"), which was substantially revised in 1995. This CAS 413 provision governs the adjustment made at the time of a segment closing, whereby the government may be liable for its share of a pension deficit or the government may be able to recoup its share of a pension surplus.

At issue in this case are two segment closings. One of the segment closings involves the original CAS 413, which applies only to cost-reimbursement contracts. The second segment closing involves the revised CAS 413, which applies to subcontracts and fixed-price contracts, as well as cost-reimbursement contracts. The parties' dispute centers on how the original and revised CAS 413 operate and how the revised CAS 413 affects a pension deficit attributable, in part, to contracts entered into under the original CAS 413.

The court has previously interpreted the provisions of the original and the revised CAS 413 related to issues raised in this case in *General Motors Corp. v. United States,* 66 Fed.Cl. 153 (2005), and *Teledyne, Inc. v. United States,* 50 Fed.Cl. 155 (2001), aff'd, 316 F.3d 1366 (Fed.Cir.2003). On issues related to this case, in *General Motors,* the court interpreted provisions of the original CAS 413 and held that: (1) a contractor's failure to fund the pension costs claimed does not bar its CAS-based claims; (2) various clauses under the FAR do not bar a contractor's CAS-based claims; (3) a contractor's claim is not barred by a general release of claims that it previously executed; and (4) a contractor is not entitled to a fee or profit on its CAS 413 segment-closing adjustment.

On issues related to this case, in *Teledyne,* the court interpreted provisions of the original and revised CAS 413 and held that: (1) a contractor is not entitled to recover either portions of its pension deficit that are attributable to firm-fixed-price contracts under the original CAS 413, or portions of its deficit that arose before the original CAS 413 became applicable to its contracts; and (2) a contractor is entitled to an equitable adjustment to the extent that a segment closing under the revised CAS 413 involves pension costs attributable to contracts entered into

under the original CAS 413. The court held that applying the revised CAS 413 provisions to pension costs attributable to contracts entered into under to the original CAS amounts to an accounting change subject to the equitable adjustment provided for under 48 C.F.R. § 52.230–2(a)(4)(i) (1998). This equitable adjustment meant, in *Teledyne,* that where there is a pension surplus, the government cannot recoup the portion of the surplus that is attributable to fixed-price contracts that were entered into under the original CAS 413.

The following facts are undisputed unless otherwise noted. In May 2000, Viacom and CBS Corporation ("CBS") merged in a stock transaction, whereby all rights and obligations of the constituent companies became by operation of law, the rights and obligations of the resulting company that began operating under the name Viacom, Inc. CBS, in turn, was the successor of Westinghouse Electric Company ("Westinghouse"), which changed its name to CBS in December 1997.

Prior to December 1, 1997, Westinghouse did business with the government through its Machinery Technology Division ("MTD"). Westinghouse also did business with the government through its Electronic Systems Group ("ESG"). As discussed below, both of these units eventually closed. These closings triggered the application of CAS 413. The court will examine each of the two segments separately.

**A. Machinery Technology Division**

Westinghouse established MTD in 1983 for the purpose of providing technical engineering services to the Naval Sea Systems Command. MTD was classified as a segment for purposes of complying with the CAS. MTD was covered under the Westinghouse Qualified Pension Plan, a qualified pension plan under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001–1461 (2000) ("ERISA"), and the Internal Revenue Code ("IRC").

MTD received two government contracts. On December 29, 1983, the United States Navy ("Navy") awarded Contract no. N00024–84–D–4312, which was a cost-plus-

fixed-fee contract. The fixed fee amount equaled 7.5% of the estimated cost of the contract. On September 30, 1986, the Navy awarded a second contract, Contract no. N00024–86–C–4030 ("Contract no. 4030"), which was also a cost-plus-fixed-fee contract. The fixed fee amount also equaled 7.5% of the estimated cost of the contract.

Both contracts included the version of the CAS clause set forth at Federal Acquisition Regulation ("FAR") § 52.230–3 (1984), which incorporated the original CAS segment closing provision in CAS 413. Under original CAS 413, "If a segment is closed, the contractor shall determine the difference between the actuarial liability for the segment and the market value of the assets allocated to the segment, irrespective of whether or not the pension plan is terminated.... The difference between the market value of the assets and the actuarial liability for the segment represents an adjustment of previously-determined pension costs." 48 C.F.R. § 9904.413–50(c)(12).[1] On November 13, 1995, MTD was notified that a follow-on contract to Contract no. 4030 would not be awarded to MTD. On December 1, 1995, MTD notified its employees that the MTD business segment would cease to exist.

Because the MTD segment never entered into a contract that was subject to the provisions of the revised CAS 413, which became effective on March 30, 1995, both parties agree that the MTD segment closing is covered by the original CAS 413. Viacom contends that the segment closing occurred on February 1, 1996. The government contends that the segment did not close until July 31, 1997, when performance finally ended under Contract no. 4030. Because all issues relating to quantum are being held in abeyance pending the outcome of these motions, the dispute over the segment closing date is not relevant to the outcome of this motion.

Although quantum is not relevant at this time, it is nonetheless not disputed that Westinghouse submitted a claim to the government's contracting officer, Thomas P. Smith, requesting payment for an adjustment and allocation of pension costs under CAS 413 in the amount of $14,391,630. The government has not issued a final decision on the MTD claim for payment of the pension deficit amount that Westinghouse claimed was owed based on its CAS 413 calculation. It is not disputed that Viacom is the successor to the Westinghouse pension cost claim on behalf of MTD.

## B. Electronic Systems Group

As noted above, Westinghouse also did business with the government through ESG, which was established in 1951 to provide services for defense-related electronic systems and subsystems. ESG performed firm-fixed-price, fixed-price incentive, and cost-type contracts for the government. With the government's approval, ESG was classified as a "segment" for purposes of complying with the CAS. ESG was covered under the Westinghouse Qualified Pension plan, which was a qualified pension plan under ERISA and the IRC. ESG also was covered under the Westinghouse Executive Pension Plan, a non-qualified pension plan under ERISA and the IRC, applicable to Westinghouse executives.

The government entered into a number of contracts with ESG. Some contracts were entered into prior to the effective date of the revised CAS 413, and some prior to the effective date of the original CAS 413. In addition, following promulgation of the revised CAS 413.50(c)(12) in 1995, the government awarded ESG at least seven CAS-covered contracts, including Contract no. F33600–C–0006 dated October 1, 1995, a firm-fixed-price contract with the Department of the Air Force, and Contract no. N00014–96–C–0007 dated December 1, 1995, a cost-plus-fixed-fee contract with the Office of Naval Research.

---

1. See *Teledyne, Inc.*, 50 Fed.Cl. at 163–169, for a comprehensive discussion of CAS 413 and its regulatory history. In brief, CAS 413 was promulgated to address the "problem [that] arises in cases where a segment is closed. Because there are no future periods in which to adjust previously-determined pension costs applicable to that segment, a means must be developed to provide a basis for adjusting such costs. This adjustment is not an actuarial gain or loss as defined in the Standard." 40 Fed.Reg. 43,873, Pt. 413, Preamble A (Sept. 24, 1975).

The revised CAS 413 was promulgated, in part, to include a specific formula for allocating the segment-closing adjustment between the government and contractors and to extend the reach of the CAS 413 segment-closing adjustment to firm-fixed-price contracts and subcontracts. In this connection, while the revised segment-closing provision retains the original CAS 413.50(c)(12) language, it goes on to state, "the full amount of the government's share of an adjustment is allocable, without limit, as a credit or charge during the cost accounting period in which the event occurred and contract prices/costs will be adjusted accordingly." 48 C.F.R. § 9904.413–50(c)(12)(vii). Thus, in contrast to the original CAS 413, which authorized recovery of the surplus or deficit under only cost-type or flexibly priced contracts, the revised CAS 413 provides for recovery of the segment-closing surplus or deficit from both cost-type contracts and firm-fixed-price contracts. See *Teledyne*, 50 Fed.Cl. at 171–178.

On February 29, 1996, Westinghouse sold substantially all of ESG to Northrop Grumman Corporation. Both the government and Westinghouse consider the sale to be a segment closing under CAS 413. Pursuant to the purchase agreement between Westinghouse and Northrop Grumman, Westinghouse retained the pension assets and benefit obligations for inactive pension plan participants. On July 12, 1996, Westinghouse submitted a claim to the contracting officer requesting payment from the government to cover the deficit arising from Westinghouse's application of the revised CAS 413 to the segment closing. Westinghouse sought a payment of over $100,000,000 for the qualified pension plan and its executive pension plan. The contracting officer has not issued a final decision on Westinghouse's claim related to the ESG segment.[2]

## C. Litigation History

Viacom filed the present action in 2001 seeking recovery of the pension deficit it argues it is owed (1) for the MTD segment closing under the original CAS 413, and (2) for the ESG segment closing under the revised CAS 413. Viacom also seeks recovery of the deficit under a variety of contract theories. Viacom's motion for partial summary judgment is focused on the meaning of both the original and revised CAS 413.[3]

The government, in its cross-motion, argues that Viacom is not entitled to any recovery under either the original or revised CAS 413 because Viacom failed to fund any of the pension costs which it claims. In the alternative, the government contends that, based on the court's reasoning in *Teledyne*, it is entitled to an equitable adjustment, in connection with the ESG sale, to the extent that the government has greater liability under the revised CAS 413 than it would have had under the original CAS. The government also challenges Viacom's claim that it is entitled to a fee or profit over and above the amount of any segment-closing adjustment calculated in accordance with the original or revised CAS 413. Finally, the government asserts that Viacom's recovery is subject to all of the government's various defenses under the FAR, including the Limitation of Cost and the Limitation of Funds clauses. In this connection, the government further argues that it is not liable for any pension deficit attributable to any contract that has been closed and as to which Viacom has executed a release. Viacom disputes all of the government's arguments.

On June 13, 2005, the court authorized Raytheon Company, which has a companion case pending before the court, to participate as an amicus curiae in the present case. Raytheon's brief is focused solely on the revised CAS 413. It argues that, to the extent any of Viacom's segment closings involve the application of the revised CAS 413,

---

**2.** On April 30, 1998, CBS, Westinghouse's successor, and the government entered into a novation agreement governing the terms and conditions for the transfer of ESG's contracts to Northrop Grumman. In the novation agreement, CBS retained its right to assert claims against the government with respect to CAS 413.

**3.** By order dated June 3, 2004, with the parties' consent, the court held in abeyance Viacom's claims for recovery of pension liabilities not otherwise recoverable under CAS 413's segment-closing provisions. As previously noted, the court stayed all issues relating to quantum.

funding is not a condition precedent for recovery and the government's call for an equitable adjustment is not legally supported. Finally, Raytheon contends that none of the government's defenses based on the FAR are legally supported.

Oral argument on the government's and Viacom's cross-motions for partial summary judgment was held on April 20, 2006.

## DISCUSSION

### A. Standard of Review

With regard to summary judgment, it is well-settled that this court is required to enter summary judgment for a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unidynamics Corp. v. Automatic Prod. Int'l.*, 157 F.3d 1311, 1316 (Fed.Cir. 1998). Here, the primary issues concern the proper interpretation of the original and revised CAS 413.50(c)(12), which is a question of law. *See Billings v. United States*, 322 F.3d 1328, 1332 (Fed.Cir.2003) ("The underlying issue, one of statutory and regulatory construction, is a question of law...."); *Perry v. Martin Marietta Corp.*, 47 F.3d 1134, 1137 (Fed.Cir.1995) (In the context of interpreting FAR provisions that were intended to implement the CAS, stating: "The interpretation of regulations incorporated into a contract is purely a legal question.") (citations omitted). Where, as here, the issue presented is a pure question of law, summary judgment is particularly appropriate. *See, e.g., Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed.Cir.1999).

### B. The MTD Segment Closing

The government raises several defenses in connection with its potential liability following the MTD segment closing. All of these defenses have been previously addressed by the court in *General Motors Corp.*, 66 Fed. Cl. at 156–160. The government asks the court to reconsider the defenses that the court rejected in *General Motors* but to adopt the rulings that were favorable to the government. As discussed below, the court concludes that there is nothing about the MTD segment closing which compels a different result from the result reached in *General Motors*.

The parties have raised a number of issues related to the MTD segment closing, which involves contracts entered into under the original CAS 413, that the court resolved in *General Motors* and *Teledyne*. These issues include: (1) whether Viacom's failure to fund the pensions costs claimed bars its CAS-based claims; (2) whether certain FAR clauses bar Viacom's CAS-based claims; (3) whether Viacom's claim is barred by a general release of claims that it previously executed; (4) whether Viacom is entitled to a fee or profit on its CAS 413 segment closing adjustment; and (5) whether Viacom is entitled to recover the portions of its pension deficit that are attributable to firm-fixed-price contracts under the original CAS 413, or the portions of its pension deficit that arose before the original CAS 413 became applicable to MTD contracts. The court reaches the same result on these issues as it did in *General Motors* and *Teledyne*. The parties have also raised a new issue related to the original CAS 413, namely whether Viacom is entitled to recover the portion of its pension deficit attributable to MTD's subcontracts. The court examines each of these issues in turn.

### 1. Viacom's Failure to Fund the Pension Costs Claimed Does Not Bar its CAS-Based Claims.

■ Relying on the FAR cost principle,[4]

---

4. The government cites the FAR cost principle that was in effect at the time of segment closure, which provides: "[T]o be allowable in the current year, pension costs must be funded by the time set for filing the Federal income tax return.... Pension costs assigned to the current year, but not funded by tax return time, shall not be allowable in any subsequent year." FAR § 31.205–6(j)(2)(i) (1996). The current version of the FAR cost principle contains similar language.

the Allowable Cost and Payment clause,[5] and CAS 412,[6] the government contends that Viacom may not recover any of the MTD related pension deficit under CAS 413 because it failed to fund the pension costs prior to the segment closing. The court rejected the same argument in *General Motors*. In General Motors the court examined each provision and concluded that the segment-closing adjustment was distinct from the general requirement that a contractor fund its pension plans before seeking reimbursement from the government. More specifically, the court stated:

> These provisions [CAS 412 and FAR § 31.205–6(j)] do not extend to the onetime calculation provided for under CAS 413 following a segment-closing.... These provisions dictate certain obligations that bind the contractor when allocating or funding pension costs for a given year. These provisions do not address a CAS 413 segment-closing adjustment.... The CAS 413 adjustment is not a "normal" pension cost or an "annual" pension cost. Rather, the calculation under CAS 413 results in an adjustment to those prior pension cost determinations. For this reason, the CAS 413 segment-closing adjustment operates independently of the contractor's obligation to properly allocate pension costs on an annual basis.

66 Fed.Cl. at 158.

The government has not presented any argument that would lead the court to question its prior ruling in *General Motors*. The government argues that the CAS 413 adjustment should not be treated as something different from an ordinary or normal "pension cost" under CAS 412. However, it is clear from an examination of CAS 412, which defines pension costs, that the CAS 413 segment-closing adjustment is not a "pension cost" but is something different and thus the segment-closing adjustment is not subject to the same rules that govern annual and normal pension cost contributions. Importantly, the CAS 413 segment-closing adjustment is not included among the components of pension costs identified in CAS 412. CAS 412–40(a) states that the components of pension cost "are (i) the normal cost of the [cost accounting period], (ii) a part of any unfunded actuarial liability, (iii) an interest equivalent on the unamortized portion of any unfunded actuarial liability, and (iv) an adjustment for any actuarial gains or losses." 48 C.F.R. § 9904.412–40(a)(1). Indeed, in the preamble to the original CAS 413, the CAS Board stated that the CAS 413 segment-closing adjustment "is not an actuarial gain or loss as defined in the Standard." 42 Fed.Reg. 37,191, 37,195 (July 20, 1977).

The government has also failed to present any new argument with respect to the Allowable Cost and Payment clause, FAR § 52.216–7(b)(2), which would compel a change from the result reached in *General Motors*. The Allowable Cost and Payment clause provides that once the contractor "actually makes the pension payment," the cost may be reimbursed. As the court held in *General Motors*, although funding the deficit is not a prerequisite to recovery under CAS 413, Viacom will be obligated to apply the funds it receives from the CAS 413 adjustment to the pension plan to cover the portion of the deficit which Viacom has not paid.[7]

---

**5.** The Allowable Cost and Payment clause that was in effect at the time of the segment closure provides in pertinent part: "Contractor contributions to any pension ... funds ... may be included in indirect costs for payment purposes: Provided, That the Contractor pays the contribution to the fund ..." 48 C.F.R. § 52.216–7(b)(2) (1996). The current version provides: "Accrued costs of Contractor contributions under employee pension plans shall be excluded until actually paid ..." 48 C.F.R. § 52.216–7(b)(2) (2006).

**6.** The original CAS 412 provides in pertinent part that pension costs may be allocated to a cost period if the contractor has paid or is liable for such payments. 48 C.F.R. § 9904.412–40(c). The revised CAS 412 was amended to expressly require funding. 48 C.F.R. § 9904.412–50(d)(1).

**7.** The court notes that Viacom argues that it has in fact paid the deficit through other contributions to the plan and is seeking only reimbursement of those costs in this case. The government disputes Viacom's factual assertions. For the purposes of this motion, the court does not address Viacom's alternative argument. The extent to which Viacom has already contributed sufficient funds to the pension plan on behalf of MTD employees will be resolved later in this case.

## 2. The Limitation of Cost and Limitation of Funds Clauses Are Not a Bar to Viacom's CAS-based Claims.

The government argues that its payment obligation is limited to the maximum amounts recoverable under the FAR's mandatory Limitation of Cost and Limitation of Funds clauses, 48 C.F.R. §§ 52.232–20 and 52.232–22. As discussed in *General Motors*, under the Limitation of Cost clause, the contractor must give notice to the contracting officer when the contractor has reason to believe that the contractor's costs will exceed 75% of the contractor's previous estimate.[8] The Limitation of Funds clause provides that the government's liability for a contract is limited to the "total amount allotted by the government to the contract," unless notice is given and more money is authorized.[9] These provisions, which the government contends ensure the government's compliance with the Anti–Deficiency Act, 31 U.S.C. § 1341 (2000),[10] prevent Viacom from seeking payment from the government for any deficiency. The government argues that Viacom's failure to comply with the above-noted notice provisions is fatal to its claim.

In response, Viacom urges the court to follow the decision in *General Motors*, in which the court held that the "Limitation of Cost and Limitation of Funds clauses were designed to provide the government with various protections in connection with cost-overruns in connection with a specific contract.... The CAS 413 segment-closing adjustment is not contract specific. The CAS 413 adjustment does not involve any individu-

al contract. Accordingly, the ... Limitation of Cost and Limitation of Funds clauses do not apply to a CAS 413 adjustment." 66 Fed.Cl. at 160.

The government has again failed to identify a compelling reason for deciding this case differently from *General Motors*. The government argues that strict compliance with the Limitation of Cost and Limitation of Funds clauses is critical to ensure that the government does not violate the purposes of the Anti–Deficiency Act. However, as Viacom correctly argues, the government may not hide behind the Anti–Deficiency Act when there is a binding obligation to pay and the government has general appropriations sufficient to cover the contractual obligation. *See Cherokee Nation of Oklahoma v. Leavitt*, 543 U.S. 631, 637–638, 125 S.Ct. 1172, 161 L.Ed.2d 66 (2005) (citing *Ferris v. United States*, 27 Ct.Cl. 542, 546, 1800 WL 2022 (1892)) ("[A]s long as Congress has appropriated sufficient legally unrestricted funds to pay the contracts at issue, the Government normally cannot back out of a promise to pay.").

In addition, Viacom correctly argues that the court could have reached the same result with regard to the application of the subject clauses by applying the doctrinal exceptions to these clauses identified in *Johnson Controls World Servs., Inc. v. United States*, 48 Fed.Cl. 479, 486 (2001). In *Johnson Controls*, the court noted that there are well-recognized exceptions to the application of

8. The Limitation of Cost clause provides: "The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that— (1) The costs the contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule; or (2) The total costs for the performance of this contract, exclusive of any fee, will be either greater or substantially less than had been previously estimated." 48 C.F.R. § 52.232–20(b) (1996). The current version contains identical language.

9. The Limitation of Funds clause provides: "The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previ-

ously incurred, will exceed 75 percent of (1) the total amount so far allotted to the contract by the Government plus the Contractor's corresponding share. The notice shall state the estimated amount of additional funds required to continue performance for the period specified in the Schedule." 48 C.F.R. § 52.232–22(c) (1996). The current version contains identical language.

10. The Anti–Deficiency Act provides in relevant part: "An officer or employee of the United States Government ... may not—(A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund ... [or] (B) involve [the] government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law." 31 U.S.C. § 1341(a)(1).

the Limitation of Cost clause and summarized those exceptions as follows:

> Decisional law teaches that the LOCC [Limitation of Cost Clause] must be applied in light of its purpose of protecting the Government and the contractor from unfunded overruns and that the LOCC does not apply if: (1) the "contractor could not have reasonably foreseen the cost overrun during the time of performance of the contract"...; (2) the costs were not avoidable by the contractor through the stoppage of work ...; (3) the Government was not prejudiced by lack of notice of the potential overrun ...; (4) the contracting officer "effectively exercised his discretion in favor of allowing overrun costs to the contractor"...; or (5) under all the circumstances, "it would be inequitable for the Government to refuse additional funding."

*Id.* at 486–487 (internal citations omitted).

Applying these tests to this case, the Limitation of Cost and Limitation of Funds clauses are not a bar. First, it is clear that Viacom's predecessor, Westinghouse, could not have reasonably foreseen during the years of its contract performance that the MTD segment would eventually close and that there would be a pension deficit to pay following the segment-closing adjustment mandated by CAS 413. Second, Westinghouse could not have avoided the incurrence of the CAS 413 segment closing costs by stopping work. These costs were the result of applying CAS 413 when Westinghouse sold the segment. Stopping work would not have prevented the incurrence of the CAS 413 segment closing costs. Finally, given the government's decision to require the inclusion of CAS 413 in its contracts with Westinghouse, it would be inequitable for the government to refuse to fund Viacom's CAS 413 claims simply because it turned out upon a segment closing that the 413 adjustment results in a pension deficit. Thus, the government has known since 1977 that it might be required to contribute to a pension deficit if one existed upon the segment's closing.

For all of the above-cited reasons the court finds that Viacom's claim is not barred by the application of these clauses.

### 3. Viacom's Claim is Not Barred By Any General Release of Claims That It Previously Executed.

■ The government argues that Viacom is not permitted to recover any portion of the pension deficit attributable to closed MTD contracts as to which Viacom has executed a general release of claims against the government. The government raised the same argument in *General Motors*. In *General Motors* this court held that the Federal Circuit's holding in *Teledyne* effectively foreclosed the government's argument. 66 Fed.Cl. at 156–157. In particular, the court explained that, in accordance with the Federal Circuit's holding in *Teledyne*, 316 F.3d at 1383 ("[T]he status of past contracts is irrelevant."), the status of past contracts would not limit the current period adjustment called for under CAS 413. 66 Fed.Cl. at 156. Thus, the nature of past contracts—for example, whether they were fixed priced or flexibly priced—is relevant in determining the amount of the CAS 413 adjustment subject to recovery. However, the "status" of those contracts—whether they are open or closed—is not relevant because CAS 413 calls for a "current period" adjustment.

The government has not presented any basis for distinguishing *General Motors* or questioning the holding. As such, Viacom's claim is not barred by any general release of claims that it previously executed.[11]

### 4. Viacom Is Not Entitled to a Fee or Profit on Its CAS 413 Segment–Closing Adjustment.

■ Viacom argues that the CAS 413 segment-closing adjustment is an equitable adjustment and therefore Viacom is entitled to profit on the adjustment. The court rejected this argument in *General Motors*, 66 Fed.Cl. at 160. In *General Motors*, the court held

---

11. The court notes that this issue is also moot because at the time of the segment closing there was an open MTD contract (and similarly, in terms of the ESG segment closing, an open ESG contract) for which a release had not been signed. This open contract would, of course, include the parties' agreement to make a CAS 413 adjustment.

that a CAS 413 adjustment is not an equitable adjustment attributable to any single contract, but a unique adjustment of previously determined pension costs that is triggered by the closing of the segment. "The CAS 413 adjustment ... is not an adjustment attributable to any individual contract. As such, the CAS 413 adjustment is not an equitable adjustment. The CAS 413 adjustment is an adjustment of 'previously determined' pension costs for the entire segment. If the calculation results in a deficit, then the government's share must be increased. If the calculation results in a surplus, then the government is entitled to be reimbursed. In either case there is no occasion to include profit." *Id.*

Viacom has not presented any basis for revisiting the court's decision in *General Motors* on this issue. Because the CAS 413 segment-closing adjustment is not an equitable adjustment associated with an individual contract, Viacom is not entitled to a profit on its CAS 413 segment adjustment.

**5. Viacom Is Not Entitled to Recover the Portions of its Pension Deficit that (1) Are Attributable to Firm–Fixed–Price Contracts Under Original CAS 413, or (2) Arose Before the Original CAS 413 Became Applicable to MTD's Contracts.**

■ Based on the Federal Circuit's holdings in *Teledyne,* 316 F.3d at 1375–80 and 1383–84, related to portions of a pension deficit that are attributable to firm-fixed-price contracts under the original CAS 413 or portions of a pension deficit that arose before the original CAS became applicable, Viacom is not entitled to recover these portions of its pension deficit. First, regarding firm-fixed-price contracts, this court's holding in *Teledyne* that "the portion of the adjustment attributable to [firm-fixed-price] contracts is not recoverable [under the original CAS 413] unless another provision in the contract expressly allows its recovery," 50 Fed.Cl. at 178, was affirmed by the Federal Circuit, 316 F.3d at 1375–80.

Second, regarding contracts that predated the original CAS 413, this court's conclusion in *Teledyne* that "the pension surplus or deficit attributable to contracts that predate the original CAS 413 must be excluded from the portion of the CAS 413 segment closing adjustment that is subject to recovery," 50 Fed.Cl. at 183, was also affirmed by the Federal Circuit. 316 F.3d at 1383–84 (affirming "the trial court's conclusion that the segment closing adjustment should not include the surplus attributable to pre-CAS contracts").

**6. Viacom Is Not Entitled to Recover the Portion of its Pension Deficit that is Attributable to MTD's Subcontracts.**

■ This court has not had a prior occasion to opine on whether the original CAS 413 extends coverage to pension costs allocated to MTD's subcontracts. The revised CAS 413 explicitly provides that it includes CAS-covered subcontracts. 48 C.F.R. § 9904.413–50(c)(12)(vi). Under the original CAS 413, by contrast, there is no mention of subcontracts. Absent specific mention, the court will not interpret the original CAS 413 to extend to subcontract pension costs. *See United Dominion Indus., Inc. v. United States,* 532 U.S. 822, 836, 121 S.Ct. 1934, 150 L.Ed.2d 45 (2001) ("[T]he mention of some implies the exclusion of others not mentioned.") Moreover, as the government correctly notes, the original CAS 413 adjustment was intended to correct for the government's past over or under contribution to the closed segment's pension costs. MTD's subcontract pension costs were not paid by the government directly; instead, the subcontract pension costs were paid by the prime contractors. Accordingly, the court agrees with the government that Viacom is not entitled to recover any portion of its pension deficit attributable to subcontracts under the original CAS 413.

**C. The ESG Segment Closing**

The ESG segment closing arose after the revised CAS 413 was promulgated and, more importantly, it arose after the government and Viacom's predecessor entered into contracts which included the revised CAS 413. Although many of the government's defenses to liability for Viacom's pension deficit are

the same with respect to the revised CAS 413 as they were with respect to the original CAS 413, the modifications to the revised CAS 413 require a separate analysis.

The parties have raised the following issues related to the ESG segment closing, which includes contracts entered into both under the original and the revised CAS 413:(1) whether Viacom's failure to fund the pension costs claimed bars its claims under the revised CAS 413; (2) whether certain FAR clauses bar Viacom's CAS-based claims; (3) whether Viacom's claim is barred by a general release of claims that it previously executed; and (4) whether Viacom is entitled to a fee or profit on its CAS 413 segment-closing adjustment. The court reaches the same result on these issues under the revised CAS 413 as it did with the original CAS 413 in *General Motors*. In addition, the parties have raised the issue of whether the application of the revised CAS 413 to pension costs attributable, in part, to contracts that were entered into under the original CAS 413 amounts to an accounting change where the segment-closing adjustment under the revised CAS 413 results in a deficit. The plaintiff argues that the reasoning of *Teledyne* with regard to a pension surplus should not be extended where there is a pension deficit. The court agrees with the government and extends its reasoning in *Teledyne* to this case. The court examines each of these issues in turn.

### 1. Viacom's Failure to Fund the Pension Costs Claimed Does Not Bar Its Claims Under the Revised CAS 413

■ For the same reasons that the court rejected the failure to fund argument with

regard to the original CAS 413, it rejects the government's argument under the revised CAS 413. The court also agrees with Viacom and amicus Raytheon that the revised CAS 413 does not require advance funding of the pension deficit amount in order to obtain payment for the pension deficit covered by the revised CAS 413.[12] Indeed, the rationale in *General Motors* applies with greater force in the context of the revised CAS 413. First, the revised CAS 413 authorizes price adjustments to fixed-price contracts which do not involve cost claims. Firm-fixed-price contracts do not ordinarily involve any direct cost-reimbursement. As such, the CAS Board in promulgating the revised CAS 413 could not have contemplated that the contractor would be required to pay the pension cost adjustment in order to recover a "price" adjustment from the government under the revised CAS 413.

Second, as with the original CAS 413, there is nothing in the plain words of the revised CAS 413 to suggest that pre-payment is required. To the contrary, the revised CAS 413 states that "the full amount of the Government's share of an adjustment is allocable, *without limit*, as a credit or charge during the cost accounting period in which the event occurred and contract prices/costs will be adjusted accordingly." 48 C.F.R. § 9904.413–50(c)(12)(vii) (emphasis added). The use of the phrase "an adjustment is allocable without limit as a credit or charge" makes plain that the contractor is not obligated to prepay pension costs in order to make the appropriate "charge" for a pension deficit to the government.[13]

For all of these reasons, Viacom's failure to fund the pension costs claimed does not

---

12. The court does not reach Raytheon's separate argument that a contractor is not obligated to pay any funds it receives under a CAS 413 segment-closing adjustment into its pension plan. The issue is not before the court at this time. As discussed below, *see* note 14, *infra*, Viacom contends that it has made adequate contributions to its pension fund but has not been able to charge those costs to the government.

13. The government also contended during oral argument that the 1995 revisions to CAS 412 establish a new pension funding requirement that must be met under CAS 413. However, the revisions to CAS 412, including the funding re-

quirement, were clearly prospective, *see* 48 C.F.R. § 9904.412–63 (2006), and therefore cannot impose a funding requirement on contracts that pre-date the 1995 revisions. This is not to say that Viacom is entitled to any portion of the deficit that Viacom or its predecessors failed to properly fund under the original or revised CAS 412. Viacom's right to recover under the original and revised CAS 413 turns on its compliance with CAS 412 in the past. There is no suggestion that Viacom did not comply with CAS 412 and therefore improperly under-funded its pension plan.

bar its claim under the revised CAS 413.[14]

## 2. The Limitation of Cost and Limitation of Funds Clauses Do Not Apply to the Segment–Closing Adjustment under the Revised CAS 413.

■ For the same reasons that the court rejected the government's arguments with respect to the application of the Limitation of Cost and Limitation of Funds clauses in connection with the MTD segment closing, the court rejects the government's arguments regarding the application of the Limitation of Cost and Limitation of Funds clauses in connection with the ESG segment closing.

In addition, to the extent that Viacom's claim under the revised CAS 413 includes firm-fixed-price contracts, the clauses are irrelevant in any event. The Limitation of Cost and Limitation of Funds clauses apply only to cost-reimbursement contracts, not fixed-priced contracts. 48 C.F.R. § 32.705–2(a). The revised CAS 413 provides for price adjustments. The revised CAS 413–50(c)(12)(vii) states in relevant part: "The full amount of the Government's share of an adjustment is allocable, without limit, as a credit or charge during the cost accounting period in which the event occurred and contract prices/costs will be adjusted accordingly." Based on the plain language of the revised CAS 413, the Limitation of Cost and Limitation of Funds clauses are not a bar to recovery.

## 3. The Release of Claims in Closed Contracts Does Not Bar Recovery.

For the same reasons that the court rejected the government's arguments with respect to the release of claims in connection with the MTD segment closing and in *General*

*Motors,* the court rejects the government's same arguments with regard to the ESG segment closing.[15]

## 4. Viacom Is Not Entitled to Any Fee or Profit on the Revised CAS 413 Segment–Closing Adjustment.

■ For the same reasons that the court rejected Viacom's claim for fee or profit in connection with the MTD segment-closing adjustment under the original CAS 413, the court rejects Viacom's arguments with regard to the portion of the ESG segment closing under the revised CAS 413. Significantly, the revised CAS 413–50(c)(12) specifically identifies the payments due or owed and does not include any mention of fee or profit.

Moreover, the CAS 413 segment-closing adjustment is not an adjustment with regard to any individual contract, which might include fee or profit. Rather, the revised CAS 413 adjustment calls for a composite calculation that involves many contracts. The revised CAS 413–50(c)(12)(vi) states in relevant part: "The government's share of the adjustment amount determined for a segment shall be the product of the adjustment amount and a fraction.... The numerator of such fraction shall be the sum of the pension plan costs allocated to all contracts and subcontracts ... subject to this Standard during a period of years representative of the Government's participation in the pension plan." Because it is a composite calculation, there is no occasion to include fee or profit in the recovery authorized by the revised CAS 413. Accordingly, Viacom's claim for fee or profit in connection with a segment closing under the revised CAS 413 must be rejected.[16]

---

**14.** As discussed above, *see* note 7, *supra,* Viacom argues in the alternative that it has, in fact, made contributions to the Westinghouse pension plan, including payments toward liabilities owed to ESG and MTD participants, that exceed the amounts it is seeking from the government in this case. Viacom argues that in the past it made payments that it was not allowed to charge to the government. Viacom also argues that it continues to make payments to the plan on behalf of ESG and MTD participants that cannot be repaid under any existing contracts. Because the court concludes that Viacom was not obligated to fund the deficit in order to obtain reim-

bursement under either the original CAS 413 or the revised CAS 413, it is not necessary to reach Viacom's funding contentions at this time. These contentions will be relevant in further proceedings regarding quantum.

**15.** *See also* note 11, *supra.*

**16.** The logic of this conclusion would also be apparent in a surplus situation where, similarly, the government would not be able to recoup from a contractor fee or profit in connection with the surplus arising from an adjustment in a CAS 413 segment closing.

**5. A Segment Closing that Applies the Revised CAS 413 Is a Government–Mandated Accounting Change with Regard to Pension Costs Attributable to Contracts That Were Entered Into Under the Original CAS 413, Triggering an Equitable Adjustment Under 48 C.F.R. § 52.230–2(a)(4)(i).**

■ Under the FAR, a government-mandated change in accounting practices will trigger an equitable adjustment. *See* FAR's CAS clause, 48 C.F.R. § 52.230–2(a)(4)(i) (2006) ("CAS clause"). The CAS clause provides for "an equitable adjustment as provided in the Changes clause of this contract if the contract cost is affected by a change which, pursuant to subparagraph (a)(3) of this clause ["The Contractor shall also comply with any CAS (or modifications to CAS) which hereafter become applicable to a contract or subcontract of the Contractor."], the Contractor is required to make to the Contractor's established cost accounting practices." *Id.*[17]

Here, the parties do not dispute that the ESG segment-closing adjustment involves contracts that were entered into both prior to the effective date of the revised CAS 413 and subsequent to its effective date. The government contends that because the ESG segment closing involves contracts that were entered into prior to the effective date of the revised CAS 413, and therefore includes fixed-price-contracts and subcontracts, if any, that were previously not subject to an adjustment, the inclusion of these contracts under the revised CAS 413 triggers the equitable adjustment provided for under 48 C.F.R. § 52.230–2(a)(4)(i). The government argues that the fact that it is the beneficiary of the equitable adjustment is irrelevant. It argues that the court's *Teledyne* holding should apply with equal force to cases involving a pension deficit.

In *Teledyne*, 50 Fed.Cl. at 186, the court held that, under 48 C.F.R. § 52.230–2(a)(4)(i), Teledyne was entitled to an equitable adjustment of the adjustment being made pursuant to the revised CAS 413 segment-closing provision. In particular, the court addressed the application of the revised CAS 413 to a closing of a segment that had a history of government contracts involving both the revised and original CAS 413. *Id.* at 185–189. The court held that because the segment closing at issue involved contracts that had been entered into after promulgation of the revised CAS 413, the segment-closing adjustment was not impermissibly retroactive. *Id.* at 186. The court stated, "Because Teledyne entered into contracts that contained the amended CAS 413.50(c)(12) and subsequently sold the TVS [Teledyne Vehicle Systems] segment in 1996, after the effective date of the new CAS 413, March 30, 1995, the application of the new CAS 413 segment closing provision is not retroactive and therefore is permissible." *Id.* The court went on to hold that while applying the revised CAS 413 to the segment closing would not be retroactive, this conclusion was tied to the provision for an equitable adjustment under 48 C.F.R. § 52.230–2(a)(4)(i). *Id.* The court stated that the amended CAS did change the parties' expectations and accounting practices with regard to contracts that did not include the revised CAS 413. *Id.* The court further concluded that this change of expectations amounted to a change in accounting practices under the CAS clause. *Id.* Thus, the court held that Teledyne was entitled to "an equitable adjustment in the amount of the pension surplus for which Teledyne is liable under the amended 1995 CAS 413.50(c)(12) that is over and above the amount for which Teledyne would have been liable under the original CAS 413.50(c)(12)." *Id.*

Viacom and Raytheon[18] urge the court to limit *Teledyne* to its circumstances and argue

**17.** The court notes that the equitable adjustment that is triggered under 48 C.F.R. § 52.230–2(a)(4)(i) when there is a government-mandated accounting change is different from the adjustment that takes place in a CAS 413 segment closing. The equitable adjustment under 48 C.F.R. § 52.230–2(a)(4)(i) is triggered by the adjustment that takes place in a CAS 413 segment closing to the extent that the CAS 413 adjustment involves contracts that pre-date the revised CAS

413 and that would not otherwise have been involved under the original CAS 413. On the other hand, the adjustment that takes place in a CAS 413 segment closing is defined by the terms of revised CAS 413.

**18.** Raytheon further argues that *Teledyne* may not have been correctly decided and that, if the revised CAS 413 is not retroactive, then a segment closing involving contracts that include the

that the concerns about retroactivity which led the court to limit Teledyne's liability should not be extended to the government. Viacom contends that the government, having voluntarily entered into contracts with the revised CAS 413, agreed to be bound by its terms, including the obligation to pay for the pension deficit attributable to firm fixed-price contracts prior to the revisions to CAS 413. In particular, Viacom relies upon *Kearfott Guidance & Navigation Corp. v. Rumsfeld*, 320 F.3d 1369 (Fed.Cir.2003), for the contention that when a party enters into a contract with the government after a new regulation takes effect, the parties are bound by the new regulation.

The court agrees with the government that in order to ensure that the long-standing expectations of the parties are maintained, regardless of whether a segment closing under the revised CAS 413 results in a surplus or a deficit, an equitable adjustment is required. As the Federal Circuit held in *Teledyne*, the terms of the contracts determine the extent of recovery. 316 F.3d at 1379. Therefore, where the pension costs are attributable to contracts that were entered into before the effective date of the revised CAS 413, either the contractor or the government is entitled to an equitable adjustment to the extent that the contractor or the government is liable for more under the revised CAS 413 than they would have been liable for under the original CAS 413.

Viacom's reliance on *Kearfott* to suggest a contrary result is misplaced. *Kearfott* involved a challenge to the application of a FAR regulation regarding the valuation of a business combination that took place prior to the effective date of the FAR provision. 320 F.3d at 1371. The Federal Circuit, in upholding the application of the FAR, explained that the change in the FAR did not interfere with any "vested rights" because the parties did not have a contractual relationship until after the FAR provision at issue went into effect. *Id.* at 1374. The Federal Circuit stated, "Because Kearfott and the government executed the contract in 1992 [after the

business combination in 1990], the FAR did not affect any 'vested rights' of Kearfott." *Id.* The court went on to hold that "the FAR [did not] impose any new obligation, duty, or disability with respect to a transaction previously entered into by Kearfott, because the relevant 'transaction' is not the 1988 business combination but rather the 1992 defense contract." *Id.* at 1375.

Here, Viacom argues that the relevant transactions should be the contracts it entered into with the government after CAS 413 was revised. Viacom's argument fails, however, because in contrast to *Kearfott*, Viacom and the government had entered into contracts under the original CAS 413 and thereby had developed expectations before CAS 413 was revised. It is because the revised CAS 413 involves an adjustment of pension costs under contracts that did not include the revised CAS language, that the present case is different from *Kearfott*. *Kearfott*, which involved new obligations with regard to previous transactions and did not affect vested rights, does not address the question at issue in this case.

In this connection, the court notes that while the Federal Circuit did not directly address the present issue, it recognized that, to the extent a CAS 413 segment-closing adjustment would apply to pension costs that were attributable to contracts entered into prior to the promulgation of the original CAS 413 in 1977, "it would amount to a change in accounting practices subject to equitable adjustment under the CAS Clause, 48 C.F.R. § 52.230–2(a)(4)(i)." *Teledyne*, 316 F.3d at 1383. Thus, the Federal Circuit has recognized that the prior contracting history of the parties cannot be ignored in implementing a CAS 413 segment-closing adjustment. If the segment-closing adjustment under the revised CAS 413 involves the adjustment of pension costs under contracts that did not include the terms of the revised CAS 413, the adjustment amounts to an accounting change that triggers the equitable adjustment provided for in the CAS clause.

revised CAS 413 does not trigger an accounting change and therefore does not trigger the need

for an equitable adjustment.

Finally, the court rejects Viacom's contention that this case is different from *Teledyne* because the government should be bound by its own regulations regardless of whether it changes pre-existing expectations. Viacom argues that the protections afforded contractors when the government interferes with vested rights by making accounting rule changes should not extend to the government. Viacom argues that the government does not need protection from its own rule changes. Contrary to Viacom's contention, the CAS clause is not designed to "protect" contractors. It is designed to ensure that contract expectations are maintained. Thus, the clause is triggered whenever "the contract cost is affected by a change." 48 C.F.R. § 52.230–2(a)(4)(i). This means that it is triggered when contract costs go up or down. Here, the government happens to be the beneficiary of the equitable adjustment because a portion of the deficit includes pension costs attributable to fixed-price contracts that were not previously subject to the revised CAS 413. If there had been a surplus, the contractor would similarly have been the beneficiary of the equitable adjustment. The purpose of 48 C.F.R. § 52.230–2(a)(4)(i) is to prevent a windfall to either side based on a CAS change that alters prior expectations. The CAS clause is not designed to protect contractors, but to protect the integrity of the contracting process by protecting the expectations of the parties.

In view of the foregoing, Viacom's and amicus Raytheon's contention that the revised CAS 413 should be extended without limitation to an entire segment-closing adjustment—without regard to the contents of the contracts that generated the pension surplus or deficit—is rejected.[19]

### CONCLUSION

For the reasons stated above, the court **GRANTS–IN–PART** and **DENIES–IN–PART** the government's motion for partial summary judgment and **GRANTS–IN–PART** and **DENIES–IN–PART** Viacom's motion for partial summary judgment.

**IT IS SO ORDERED.**

---

19. Raytheon argues, at length, that the revised CAS 413 establishes a payment obligation that is fundamentally different from the obligation that was established in the original CAS 413. According to Raytheon, the revised CAS 413 establishes an "independent, free-standing obligation to pay a segment closing adjustment without regard to the terms and conditions that gave rise to the surplus or deficit." Raytheon Br. 4. The court disagrees with this contention. For the reasons discussed above, the government's obligations under the revised CAS 413 are not absolute. The court cannot ignore the contractual history of the parties. For example, to the extent the application of the revised CAS 413 adjustment results in a change in expectations of the parties based on their past contract history, that change must be accommodated through an equitable adjustment.

In addition, the court also disagrees with the government's contention that the revised CAS 413 is illegal to the extent it created "any" obligation for the government to pay. The court previously held in *Teledyne*, 50 Fed.Cl. at 188, that to the extent there is any issue as to whether the revised CAS 413 created a lawful payment obligation, that obligation is now codified in FAR § 31.205–6(j)(3), which states: "For segment closings ... the amount of the adjustment shall be ... the amount measured, assigned and allocated in accordance with [CAS] 413." This FAR provision ensures that the contractual obligation created by the revised CAS 413.50(c)(12) adjustment is paid. Thus, the FAR confirms the contractual rights established by the revised CAS 413 in contracts following its promulgation. In effect, the FAR amendments ratify the CAS Board's actions to require the cost and price adjustments provided for in the revised CAS 413.

Moreover, as the government admits, contracting parties may themselves agree to a payment obligation and the government certainly agreed to the inclusion of the revised CAS 413 in the ESG contracts in this case. In such circumstances, to the extent the government contends that the CAS Board may have exceeded its authority in promulgating the revised CAS, it waived the claim by agreeing to its inclusion in its ESG contracts. *See American Tel. & Tel. Co. v. United States*, 307 F.3d 1374, 1380 (2002).