GENERAL MOTORS CORPORATION,
Plaintiff,

v.

The UNITED STATES, Defendant.

No. 00–40C.

United States Court of Federal Claims.

June 28, 2005.

154

Marcia G. Madsen, Washington, DC, for plaintiff. Andrew J. Morris, Cameron S. Hamrick, Robert L. Bronston, and Fatima Goss Graves, of counsel. Daniel F. Doogan, Detroit, MI, of counsel.

C. Coleman Bird, Washington, DC, with whom were Assistant Attorney General Peter D. Keisler, and Director David M. Cohen, for defendant. Stephen R. Dooley, Defense Contract Management Agency, of counsel.

## OPINION

FIRESTONE, Judge.

Pending before the court is the United States' (the "government's") Motion to Dismiss and General Motors Corporation's ("GM's" or the "plaintiff's") cross-motion for partial summary judgment. For the reasons that follow, the court **GRANTS–IN–PART** and **DENIES–IN–PART** the government's motion and **GRANTS–IN–PART** and **DE-NIES–IN–PART** GM's motion.

## BACKGROUND

The facts relevant to these motions are not in dispute and can be briefly summarized as follows. GM is a corporation that, *inter alia,* provides products and services under prime contracts with the United States government. One of the divisions through which GM provided services to the government was its Allison Gas Turbine Division ("Allison"). On December 1, 1993 GM sold its Allison division. The sale of Allison constituted a segment-closing which triggered certain obligations on the part of the plaintiff under the Cost Accounting Standard (the "CAS"), 48 C.F.R. § 9904.413–50(c) (1977), which governs the accounting of pension costs.[1] "CAS 413 not only establishes the rules that govern how contractors should account for pension costs, but also provides for an eventual settling-up of pension costs between contractors and the government when a segment belonging to the contractor ceases to engage in

---

1. While the CAS was revised considerably in 1995, all of the contracts at issue in this case predate these changes, and, as such, are governed by the original CAS, which was promulgated in 1977 and which came into effect in 1978. *See General Electric v. United States,* 60 Fed.Cl. 782, 784 n. 1 (2004). CAS 413 provides, in relevant part, as follows: "If a segment is closed, the contractor shall determine the difference between the actuarial liability for the segment and the market value of the assets allocated to the segment, irrespective of whether or not the pension plan is terminated." 48 C.F.R. § 9904.413–50(c)(12).

government contracting." *General Electric,* 60 Fed.Cl. at 785.

It is not disputed that GM sponsored two defined benefit pension plans: one for hourly employees and one for salaried employees. GM also used composite accounting and as a consequence did not have a segment separately designated for its Allison employees prior to the sale. GM does not dispute that, at the time of the Allison segment-closing, GM's pension funds were underfunded, including the portion allocated to the Allison segment. Finally, it is not disputed that, prior to the Allison segment-closing, GM had closed out various contracts with the government and had entered into releases which released the government from any claims arising under such closed contracts.

In a letter dated March 29, 1996, GM submitted a certified claim in the amount of $252,814,631 to the Corporate Administrative Contracting Officer ("CACO" or "contracting officer") for a segment-closing adjustment. GM calculated this amount based on its reading of CAS 413.50(c)(12). After negotiations broke down over the specific amount owed by the government to GM, the CACO denied GM's claim in full on January 19, 2000. GM filed its complaint in this court on January 27, 2000.

## DISCUSSION

### I. Statute of Limitations and the Contract Disputes Act

The government first moves to preemptively dismiss, pursuant to 28 U.S.C. § 2501 (2005), a portion of GM's claims under the Tucker Act, 28 U.S.C. § 1491 (2005), for failure to comply with the six year statute of

limitations applicable to actions filed in this court.[2] The government claims that any cause of action that is not covered by the Contract Disputes Act, 41 U.S.C. §§ 601–612 (2005) ("CDA"), accrued on December 1, 1993, upon the sale of the Allison segment. The government argues that GM's claims based on the Tucker Act alone are barred by the six year statute of limitations because the claims were filed more than six years after the cause of action accrued. The government acknowledges that GM's claims filed under the CDA are timely.

Putting aside how the parties have framed their arguments, the essence of the government's contention is that the CDA provides the exclusive mechanism for GM to present its contract claims and that while the Tucker Act provides jurisdiction to render judgment upon GM's CDA claims, it does not provide a separate basis for GM to bring its claims outside of the confines of the CDA's restrictions. The government therefore seeks to limit GM's claims to those authorized under the CDA. GM contends that this court has jurisdiction under both the Tucker Act and the CDA to hear its claims and that the CDA does not limit the jurisdiction that GM would otherwise have under the Tucker Act for breach of contract claims.

■ The court agrees with the government. It is well-settled that, if the CDA applies to a government contract dispute, then the CDA provides the exclusive remedy for resolving those contract claims. As the Federal Circuit has stated, "when the [CDA] applies, it provides the exclusive mechanism for dispute resolution; the [CDA] was not designed to serve as an alternative adminis-

---

**2.** The government has styled its motion as a motion to partially dismiss GM's claims under Rule 12 of the Rules of the United States Court of Federal Claims ("RCFC"), including, in the case of its statute of limitations argument, claims that have not even been presented to this court. As the plaintiff noted, a better vehicle for the government's arguments would have been an RCFC 56 motion for summary judgment. Because the court is engaging in the interpretation of regulations and contractual terms, the government's motion will be treated as a motion for summary judgment and will be considered under the standards applicable to summary judgment motions. *Barseback Kraft AB v. United States,* 121 F.3d

1475, 1480 (Fed.Cir.1997); *General Electric,* 60 Fed.Cl. at 790. *See* RCFC 12, 56. RCFC 56 provides that this court is required to enter summary judgment for a party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Unidynamics Corp. v. Automatic Prod. Int'l.,* 157 F.3d 1311, 1316 (Fed.Cir. 1998).

**156**

trative remedy, available at the contractor's option." *Texas Health Choice, L.C. v. Office of Personnel Management,* 400 F.3d 895, 898–899 (Fed.Cir.2005) (citing *Dalton v. Sherwood Van Lines, Inc.,* 50 F.3d 1014, 1017 (Fed.Cir.1995)). Thus, while the Tucker Act provides this court with jurisdiction to hear contract disputes, if the CDA applies, then the CDA governs the contract claims. Because the parties agree that the present contract disputes are subject to the CDA, only those contract claims that comport with the requirements of the CDA may be heard by the court. Any other contract claims are hereby **DISMISSED.**

## II. Release of Claims

█ Next, the government moves to limit GM's claim under the CDA to the pension costs associated with government contracts that were open at the time of the Allison segment-closing. The government argues that GM is not entitled to recover pension costs on contracts that were closed before the Allison sale. The government contends that GM released the government from any claims for pension costs that it might have had under contracts that were closed prior to the sale and which included a release. More specifically, the government argues that, because GM executed a general release of all claims under those closed contracts, it is not entitled to any pension costs attributable to those closed contracts.[3] The government argues that any pension deficit that the government might otherwise owe pursuant to CAS 413 for closed contracts has been discharged by the general release language. The government asks the court to dismiss those portions of the plaintiff's claim which relate to pension cost adjustments attributable to contracts for which a release was executed without language reserving GM's rights to pension costs under CAS 413.

GM replies that the government's argument has been foreclosed by the Federal Circuit's decision in *Allegheny Teledyne Inc. v. United States,* 316 F.3d 1366, 1383 (Fed.

Cir.2003). In that case, Teledyne appealed the trial court's conclusion that the segment-closing adjustment "provides recovery of costs allocated to contracts that were closed without assignment of refunds, rebates, and credits." *Id.* at 1382. In affirming the trial court's holding that the "adjustment ... may be recovered under any flexibly-priced contract that remains open during the year of the segment-closing" the court held that "it is only the status of current contracts that matter. Therefore, the status of past contracts is irrelevant." *Id.* at 1373, 1383. The plaintiff argues that this language indicates that the segment-closing adjustment may include closed contracts as long as there is at least one flexibly-priced contract open during the year of the segment-closing.

While the issue in this case was not squarely addressed by the Federal Circuit's *Teledyne* decision, the court agrees with GM that the Federal Circuit's holding effectively forecloses the government's argument. Contrary to the government's contention, it was clear from the *Teledyne* decisions before both the trial court and the Federal Circuit that the "status" of past contracts, namely whether the contracts were open or closed, would not limit the current period adjustment called for under CAS 413.50(c)(12). It was clear from these decisions and the language of 413 that the segment-closing calculation would include both open and closed flexibly-priced contracts. The fact that GM executed releases for the closed contracts does not therefore foreclose a current period adjustment of previously determined pension costs under CAS 413.

By its terms, CAS 413 contemplates an adjustment of all previously determined pension costs under all open and closed flexibly-priced contracts. The government argues that closed contracts that include a general release should be treated the same as fixed-price contracts under the *Teledyne* decision and should not be included in the CAS 413 adjustment. The government argues that a

---

**3.** Before final payment can be made on a contract, the contractor must execute a general release which discharges "the Government, its officers, agents, and employees from all liabilities, obligations and claims arising out of or under this contract except ... [s]pecified claims stated in exact amounts, or in estimated amounts when the exact amounts are not known." 48 C.F.R. § 52.216–7(h)(2)(ii).

release changes the nature of the relationship between the parties. The court disagrees. The distinction drawn in *Teledyne* between fixed-price contracts and flexibly-priced contracts was based on the fact that costs are never adjusted when fixed-price contracts are closed. *Teledyne*, 316 F.3d at 1376. The CAS 413 adjustment of previously determined pension costs, therefore, does not apply to these contracts. The execution of a release of a flexibly-priced contract does not make it like a fixed-price contract for the purpose of the CAS. As flexibly-priced contracts, the contracts in the present case are subject to the cost adjustments provided for by CAS 413.

For all of these reasons, the court agrees with the plaintiff that general releases, which do not specifically reserve the right to adjust pension costs in closed contracts, do not foreclose inclusion of those contracts in a segment-closing adjustment pursuant to CAS 413.50(c)(12). The government's motion to limit GM's recovery under CAS 413 to only flexibly-priced contracts that were open at the time of the Allison segment-closing is **DENIED**. GM's cross-motion is **GRANTED**.

### III. Funding Requirement

Next, the government contends that an overlapping group of Federal Acquisition Regulation ("FAR") and CAS provisions bar GM from recovering pension costs under CAS 413. In particular, the government relies on provisions which require that a contractor contribute its share of a segment-closing adjustment to its pension plans by the time it filed its tax return for the year of the segment-closing. The government argues that if GM failed to timely make these contributions, then the FAR and CAS disallow the payment of these pension costs for that year or for subsequent years. The government finds this funding requirement in three provisions: the FAR cost principle, the Allowable Cost and Payment Clause, and CAS 412.

The FAR cost principle applicable to the transactions at issue provides that "to be allowable in the current year, pension costs must be funded by the time set for filing the Federal income tax return." 48 C.F.R. § 31.205–6(j)(2)(i) (1993). The FAR cost principle more fully provides that:

> Except for unfunded pension plans as defined in 31.001, to be allowable in the current year, pension costs must be funded by the time set for filing the Federal income tax return or any extension thereof. [N]ormal costs of pension plans not funded in the year incurred, and all other components of pension costs ... assignable to the current accounting period but not funded during it, shall not be allowable in subsequent years....

48 C.F.R. § 31.205–6(j)(2)(i), (3)(i). The Allowable Cost and Payment Clause provides, in pertinent part:

> Contractor contributions to any pension ... funds that are paid quarterly or more often may be included in indirect costs for payment purposes: *Provided*, That the Contractor pays the contribution to the fund within 30 days after the close of the period covered.... Accrued costs for such contributions that are paid less often than quarterly shall be excluded from indirect costs for payment purposes until the Contractor actually makes the payment.

48 C.F.R. § 52.216–7(b)(2). Finally, CAS 412 provides that annual pension costs that were assignable to a particular cost accounting period are not allocable to the cost objectives of that period unless "liquidation of the liability for such [pension] cost can be compelled or liquidation is actually effected in that period." 48 C.F.R. § 9904.412–40(c). Taking these provisions together, the government argues that pension costs must be funded in the appropriate year and that if GM failed to make the proper payment, then it may not recover the pension cost under CAS 413.

The government argues that GM was obligated to determine the amount needed to meet the deficit triggered by the Allison segment-closing and then to advance that payment in the year of the segment-closing. The government contends that under the FAR and CAS, if these pension costs were not funded in the appropriate year or years, then the government cannot be charged for these pension costs.

The plaintiff responds that the provisions cited by the government do not apply to the segment-closing adjustment mandated under CAS 413 because the funding requirement extends only to "normal" pension costs, and not to the extraordinary, one-time segment-closing adjustment provided for under CAS 413. Specifically, the plaintiff argues that CAS 412 does not apply because it refers to "annual pension adjustments" rather than to the segment-closing adjustments specifically addressed by CAS 413. GM argues that the CAS 413 adjustment is not an "annual" pension cost. GM next argues that the FAR cost principle does not apply to the segment-closing adjustment because, by its terms, it only applies to "normal costs of pension plans not funded in the year incurred" and "all other components of pension costs." 48 C.F.R. § 31.205–6(j)(3)(i)(A). These components are defined in CAS 412 to include annual costs and therefore the FAR cost principle does not include the one-time segment-closing adjustment. Finally, GM contends that the Allowable Cost and Payment Clause, like CAS 412, does not apply to the one-time segment-closing adjustment.

Alternatively, the plaintiff argues that the Allowable Cost and Payment Clause does not permanently disallow recovery even if it applies to segment-closing adjustments; rather, it allows recovery once a plaintiff makes the appropriate contributions, after the CAS 413 segment-closing adjustment is finally determined.

■ Beginning with the government's arguments under CAS 412 and the FAR cost principle, the court agrees with GM that these provisions do not extend to the one-time calculation provided for under CAS 413 following a segment-closing. The CAS 412 provision cited provides that pension costs are not allocable to cost objectives unless "liquidation of the liability for such [pension] cost can be compelled or liquidation is actually effected in that period." 48 C.F.R. § 9904.412–40(c). The FAR cost principle

provides that "to be allowable ... pension costs must be funded by the time set for filing the Federal income tax return." 48 C.F.R. § 31.205–6(j)(2)(i). These provisions dictate certain obligations that bind the contractor when allocating or funding pension costs for a given year. These provisions do not address a CAS 413 segment-closing adjustment. It therefore does not follow that the failure to fulfill these obligations forecloses recovery of a deficit following a CAS 413 segment-closing adjustment. These limitations on a contractor's right to obtain pension costs from the government if it fails to properly allocate pension costs in the appropriate period are designed to ensure that contractors make proper contributions to their pension funds on an annual basis.

As was discussed at length at the oral argument on these motions, there is no reason to question GM's annual compliance with CAS 412 or the FAR cost principle provision.[4] Rather, this case involves a one-time extraordinary adjustment following a segment-closing. The CAS 413 adjustment is not a "normal" pension cost or an "annual" pension cost. Rather, the calculation under CAS 413 results in an adjustment to those prior pension cost determinations. For this reason, the CAS 413 segment-closing adjustment operates independently of the contractor's obligation to properly allocate pension costs on an annual basis.

■ The government's final argument that the Allowable Cost and Payment Clause bars recovery under CAS 413 also fails. As noted above, the Allowable Cost and Payment clause provides that "Accrued costs for ... contributions that are paid less often than quarterly shall be excluded from indirect costs for payment purposes until the Contractor actually makes the payment." 48 C.F.R. § 52.216–7(b)(2). The plain language of the provision provides that any disallowance of pension costs that might arise if a contractor fails to properly contribute to its

4. The government acknowledged at the June 9, 2005 oral argument that GM had complied with CAS 412 and had properly funded its pension plans. June 9, 2005 Tr. at 56–57. GM further explained that it makes two types of contributions to its pension plans. GM makes its regular contribution and, in addition, a separate contribution for the portion attributable to the underfunded portion of the plans. GM, in this litigation, is seeking an adjustment of pension costs to reflect the government's share for both types of payments. June 9, 2005 Tr. at 67–68.

pension obligations is removed once the "Contractor actually makes the payment." GM argues that this clause does not apply to any CAS 413 adjustment. In the alternative, GM argues that if this clause applies to the CAS 413 segment-closing adjustment, then "GM would have the option of paying the segment-closing adjustment into its plans at the conclusion of this case, once the amount of the adjustment has been definitively established." Pl. Opp. to Def. Motion at 19. GM notes that the deficit in the Allison segment pension plan is now smaller because GM has been making contributions attributable to the government's share while this litigation has been pending.

The court agrees with GM that prior compliance with the Allowable Cost and Payment Clause does not bar recovery here. The court finds that the Allowable Cost and Payment Clause mandates that contractors pay pension costs into the pension fund in order to claim reimbursement. The government's payment of pension costs has been coupled with the contractor's concomitant obligation to make appropriate payments into the pension fund. Thus, the court is persuaded that GM will be required to make an appropriate payment into the Allison segment pension fund if it recovers in this case. This outcome assures that any recovery under CAS 413 is properly directed to the Allison segment pension funds and addresses the government's fundamental concern that any payment based on a deficit to the pension fund following a CAS 413 adjustment be paid to the pension fund. Because GM has been contributing to the pension fund for several years following the Allison segment-closing, it is impossible to determine the precise amount GM will be required to contribute to the pension fund

and the appropriate amount that it should be reimbursed, if any, for its ongoing contributions to the pension funds while this case has been pending. Final resolution of this issue is therefore premature.

## IV. Limitation of Cost and Limitation of Funds Clauses

■ The government next argues that the FAR's Limitation of Cost and Limitation of Funds clauses limit the maximum amount that GM may recover. The Limitation of Cost clause provides that the contractor must give notice to the contracting officer when the contractor has reason to believe that the contractor's costs will exceed 75% of the contractor's previous estimate.[5] If a contractor notifies the government that it expects to overrun its costs, the contracting officer can choose to increase the estimated cost, thus allowing the contractor to continue performing the contract while retaining the ability to receive payment for this performance. If the contractor fails to give the notice as required, or if the contracting officer fails to increase the estimated cost, then "the Government is not obligated to reimburse the contractor for any costs in excess of the estimated cost." 48 C.F.R. § 52.232–20(e). The Limitation of Funds clause provides that the government's liability for a contract is limited to the "total amount allotted by the Government to th[e] contract." 48 C.F.R. § 52.232–22.[6] The government argues that these clauses prevent GM from claiming any money that it might otherwise be owed pursuant to a segment-closing adjustment if that amount was above the amount estimated by the parties for the cost of the contract.

---

5. The Limitation of Cost clause is codified in the FAR as follows:

> The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that—(1) The costs the contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule; or (2) The total cost for the performance of this contract, exclusive of any fee, will be either greater or substantially less than had previously been estimated.

48 C.F.R. § 52.232–20(b).

6. The Limitation of Funds clause provides that:

> The Contractor shall notify the Contracting Officer in writing whenever it has reason to believe that the costs it expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of (1) the total amount so far allotted to the contract by the Government or, (2) if this is a cost-sharing contract, the amount then allotted to the contract by the Government plus the Contractor's corresponding share.

48 C.F.R. § 52.232–22.

The plaintiff responds by arguing, primarily, that the Limitation of Cost and the Limitation of Funds clauses do not apply to costs that may be owed pursuant to a CAS 413 segment-closing adjustment. The plaintiff also argues in the alternative that the clauses do not require GM to give notice to the government for cost overruns, that GM did provide the government with adequate notice, and that, in any event, GM would have been excused from giving notice in this case.

For many of the reasons stated above, the court agrees with the plaintiff that the Limitation of Cost and the Limitation of Funds clauses cannot operate to foreclose a final adjustment of previously determined pension costs as part of a segment-closing adjustment under CAS 413. The government's reading of the clauses would subvert the requirements of the CAS 413. Compliance with CAS 413 is mandatory. The CAS 413 adjustment is an adjustment of previously determined costs for all post-CAS flexibly-priced contracts. It does not result in the incurrence of any additional contract-specific pension costs. Thus, the CAS 413 adjustment does not implicate the Limitation of Cost and Limitation of Funds clauses.

The Limitation of Cost and Limitation of Funds clauses were designed to provide the government with various protections in connection with cost-overruns in connection with a specific contract. The Limitation of Cost and Limitation of Funds clauses "protect both the contractor and the government" by ensuring that both can make informed decisions regarding whether to continue with a specific contract. *Advanced Materials, Inc. v. Perry*, 108 F.3d 307, 310 (Fed.Cir.1997). The CAS 413 segment-closing adjustment is not contract specific. The CAS 413 adjustment does not involve a cost adjustment of any individual contract. Accordingly, the court agrees with GM that the Limitation of Cost and Limitation of Funds clauses do not apply to a CAS 413 adjustment and therefore GM's claim is not barred by application of these clauses.[7] GM's motion for partial summary judgment on this issue is **GRANTED**.

7. Because the court has concluded that the Limitation of Cost and Limitation of Funds clauses are not implicated by the CAS 413 segment-closing adjustment, the court has no occasion to

## V. Profit

■ Lastly, the government argues that the plaintiff has no right to recover a profit as part of a CAS 413 segment-closing adjustment. The government contends that CAS 413 does not allow for any profit. GM admits that "its claim for profit is based upon an established practice between the parties of adding profit in resolving previous CAS disagreements." Plaintiff's Opp. to Def.'s Mot. to Dismiss at 38. GM contends that it can show that the parties have, in the past, added profit to pension cost adjustments in resolving these disputes.

The court agrees with the government that there is no right to a profit in connection with an adjustment of pension costs under CAS 413. The plaintiff's contention that the terms of past settlements of pension disputes included a profit does not lead to the conclusion that there is a *right* to such profit. There is nothing in CAS 413 which would authorize the payment of a profit on a CAS 413 adjustment.

The segment-closing adjustment provides for an accounting adjustment based on the fact that there will no longer be future contracts available to adjust for the government's prior payment of the segment's pension costs. The CAS 413 adjustment, as discussed above, is not an adjustment attributable to any individual contract. As such, the CAS 413 adjustment is not an equitable adjustment. The CAS 413 adjustment is an adjustment of "previously determined" pension costs for the entire segment. If the calculation results in a deficit, then the government's share must be increased. If the calculation results in a surplus, then the government is entitled to be reimbursed. In either case there is no occasion to include profit. The government is entitled to summary judgment on this issue.

## CONCLUSION

In conclusion, the court **GRANTS–IN–PART** and **DENIES–IN–PART** the govern-

opine on whether GM satisfied the notice provisions in those clauses or was otherwise excused from compliance.

ment's motion. The court holds that the plaintiff is barred from bringing any contract claims that do not comport with the CDA and **GRANTS** the government's motion with regard to the plaintiff's claims that might fall outside of the CDA. The court therefore **DENIES** the plaintiff's motion as it pertains to this jurisdictional issue. The court **DENIES** the government's motion as it pertains to its funding arguments, its arguments regarding release of claims, and its arguments under the Limitation of Cost and the Limitation of Funds clauses. The plaintiff is not barred under any of these provisions from recovering any segment-closing adjustment that it might be owed pursuant to a segment-closing under CAS 413. The plaintiff's motion for summary judgment with regard to these issues is **GRANTED**. However, as discussed above, GM will be required to pay any deficit not otherwise paid into the Allison segment pension funds into those funds. The government's motion is **GRANTED** with regard to the plaintiff's right to profit as part of the segment-closing adjustment. The plaintiff is entitled to a settling-up pursuant to CAS 413; it is not entitled to a profit on its CAS 413 adjustment. The plaintiff's motion for summary judgment with regard to profit is therefore **DENIED**.

**IT IS SO ORDERED.**