**CBS CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 01–79C.

United States Court of Federal Claims.

Feb. 21, 2007.

Marcia G. Madsen, Washington, DC, for Amicus Curiae General Motors.

## ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION

FIRESTONE, Judge.

This matter comes before the court on a motion by the plaintiff, CBS Corporation, ("CBS" or "plaintiff"), for the court to reconsider certain of its holdings in its May 8, 2006 decision, *Viacom, Inc. v. United States*, 70 Fed.Cl. 649 (2006).[1] The court's decision in *Viacom* dealt with the scope and the application of both the original Cost Accounting Standard ("CAS") 413.50(c), 48 C.F.R. § 9904.413–50(c)(12) (1994) ("original CAS 413"), which was promulgated in 1977, and the revised CAS 413.50(c), 48 C.F.R. § 9904.413–50(c)(12) (2006) ("revised CAS 413"), which was substantially revised in 1995. This CAS provision governs the adjustment made at the time of a segment closing, whereby the government may be liable for its share of the segment's pension deficit or the government may be able to recoup its share of the segment's pension surplus. In its motion, CBS challenges the portion of the court's decision regarding the application of the CAS 413 segment-closing provision to the portion of the pension deficit or surplus attributable to a closed segment's subcontracts with the government.[2] The court held in its May 8, 2006 decision that original CAS 413 did not provide for the recovery of any portion of the segment's pension deficit or surplus attributable to government subcontracts. 70 Fed.Cl. at 659. Revised CAS 413 now expressly includes

Thomas A. Lemmer, Denver, CO, for plaintiff. Herbert L. Fenster and Christopher Bouquet, of Washington, DC, Mark J. Meagher, of Denver, CO and Eric J. Sobczak, Pittsburg, PA, of counsel.

C. Coleman Bird, U.S. Department of Justice, Washington, DC, with whom were Peter D. Keisler, Assistant Attorney General and Director David M. Cohen, for defendant. Gregory T. Allen, Defense Contract Management Agency, Manassas, VA, of counsel.

Karen L. Manos, Washington, DC, for Amicus Curiae Raytheon Company.

1. Subsequent to the court's May 8, 2006 decision, the court granted the plaintiff's motion for change of name to CBS Corporation. *See* court's May 10, 2006 Order.

2. Original CAS 413.50(c)(12) provided in relevant part:

   If a segment is closed, the contractor shall determine the difference between the actuarial liability for the segment and the market value of the assets allocated to the segment, irrespective of whether or not the pension plan is terminated.... The difference between the market value of the assets and the actuarial liability for the segment represents an adjustment of previously-determined pension costs.

Revised CAS 413.50(c)(12) provides in relevant part:

The government's share of the adjustment amount determined for a segment shall be the product of the adjustment amount and a fraction.... The numerator of such fraction shall be the sum of the pension plan costs allocated to all contracts and subcontracts (including Foreign Military Sales) subject to this Standard during a period representative of the Government's participation in the pension plan. The denominator of such fraction shall be the total pension costs assigned to cost accounting periods during those same years. This amount shall represent an adjustment of contract prices or cost allowance as appropriate.

subcontracts in the segment-closing adjustment. Therefore, the court held that in a segment closing under revised CAS 413 the government is entitled to an equitable adjustment under 48 C.F.R. § 52.230–2(a)(4)(i) (2006) ("CAS clause")[3] for the portion of the pension deficit that is attributable to subcontracts that were subject only to original CAS 413. *Id.* at 663.

In its motion for reconsideration,[4] CBS argues that (1) original CAS 413 included pension costs attributable to flexibly-priced subcontracts,[5] and (2) even if original CAS did not include pensions costs attributable to subcontracts, the government could not make a claim for an equitable adjustment because the government lacks privity under subcontracts with CBS.[6]

The government argues, in response, that original CAS 413.50(c)(12) did not explicitly provide for the recovery of the portion of the closed segment's pension surplus or deficit that was attributable to subcontracts. Without a provision providing for such recovery, the government argues, the government did not have to correct for any under– or over-contribution to the segment's pension plan with respect to a particular subcontract. Therefore, the government argues that it is entitled to an equitable adjustment in a segment closing to the extent the government is required under the revised CAS 413 segment

closing provision to pay for its share of a pension deficit attributable to subcontracts entered into prior to the effective date of revised CAS. With regard to CBS' argument that the government lacks privity under subcontracts with CBS to assert a claim for an equitable adjustment, the government argues that it has privity under current contracts with CBS and that the adjustment occurs in the context of a CBS prime contract.

For the reasons stated below, the court is now persuaded that revised CAS 413 did not result in a change from original CAS 413 with regard to flexibly-priced subcontracts, and that the government is therefore not entitled to an equitable adjustment equal to its share of this portion of the deficit where revised CAS 413 applies to flexibly-priced subcontracts entered into under original CAS 413.[7]

## I. DISCUSSION

### A. Standard of Review

■ Under Rule 59 of the Rules of the United States Court of Federal Claims ("RCFC"), the court may consider and amend its findings in appropriate circumstances. In order to obtain relief, a party must show a manifest error of law, or mistake of fact. The motion is not intended "to give an unhappy litigant an additional chance

---

3. Under the Federal Acquisition Regulations' ("FAR's") CAS clause, a government-mandated change in accounting will trigger an equitable adjustment. The CAS clause provides for "an equitable adjustment as provided in the Changes clause of this contract if the contract cost is affected by a change which, pursuant to subparagraph (a)(3) of this clause [The Contractor shall also comply with any CAS (or modifications to CAS) which hereafter become applicable to contract or subcontract of the Contractor . . . .], the Contractor is required to make to the Contractor's established cost accounting practices." 48 C.F.R. § 52.230–2(a)(4).(i).

4. CBS did not brief the subcontracts issue prior to the court's May 6, 2006 decision, despite the fact that the government had raised the issue in its partial motion for summary judgment. Due to the importance of subcontracts in this and other CAS-related cases, upon CBS' motion for reconsideration filed on July 6, 2006, the court ordered additional briefing as to the applicability of original CAS 413 to flexibly-priced subcontracts. *See* July 11, 2006 Order.

5. In *Teledyne v. United States*, 50 Fed.Cl. 155 (2001), *aff'd*, 316 F.3d 1366 (Fed.Cir.2003), this court held that original CAS 413 did not include the portion of a pension surplus or deficit attributable to fixed-price contracts. Therefore, only *flexibly-priced* subcontracts are at issue here.

6. *Amicus Curie* parties General Motors Corporation ("GM") and Raytheon Company ("Raytheon") have filed briefs in support of CBS' motion for reconsideration on the subcontracts issue.

7. Because the court holds that there is no change in accounting practices where a segment-closing adjustment under revised CAS 413 includes costs attributable to flexibly-priced subcontracts entered into under original CAS 413, and therefore the government is not entitled to an equitable adjustment, the court does not reach CBS' alternative lack of privity argument.

to sway the court." *Bishop v. United States,* 26 Cl.Ct. 281, 286 (1992) (quoting *Circle K Corp. v. United States,* 23 Cl.Ct. 659, 664 (1991)). As the *Bishop* court explained, ordinarily "[t]he movant must show either that an intervening change in controlling law has occurred, evidence not previously available has become available, or that the motion is necessary to prevent manifest injustice." *Id.* (citing *Weyerhaeuser Corp. v. Koppers Co.,* 771 F.Supp. 1406, 1419 (D.Md.1991)).

## B. The Inclusion of Pension Costs Attributable to Flexibly–Priced Subcontracts in the Revised CAS 413 Segment–Closing Adjustment is Not a Change From Original CAS 413.

### 1. The Plaintiff's Arguments

■ First, CBS, GM and Raytheon argue that the plain language of original CAS 413, the statutes authorizing CAS, and the regulations implementing CAS provided for the inclusion of subcontract pension costs in the segment-closing adjustment. Original CAS 413.50(c)(12) provided in pertinent part:

> If a segment is closed, the contractor shall determine the difference between the actuarial liability for the segment and the market value of the assets allocated to the segment, irrespective of whether or not the pension plan is terminated.... The difference between the market value of the assets and the actuarial liability for the segment represents an adjustment of previously determined pension costs.

Raytheon contends that the "difference between the actuarial liability for the segment and the market value of the assets" necessarily includes the *entire* amount of the surplus or deficit, regardless of the origin of the pension contributions that gave rise to it. Therefore, Raytheon argues that there is no basis in the language of original CAS 413 for excluding the portion of a surplus or deficit attributable to subcontracts from the segment–closing adjustment.[8]

CBS and GM argue that the "general applicability" section of original CAS 413 demonstrates that subcontract costs were to be included in the segment-closing adjustment. The "general applicability" section of original CAS 413 provided as follows: "General applicability of this Cost Accounting Standard is established ... to include the Cost Accounting Standards contract clause in negotiated defense prime contracts and *subcontracts.*" 4 C.F.R. § 413.10 (1987) (emphasis added). CBS and GM argue that the court's reliance on the fact that revised CAS 413.50(c)(12) refers to subcontracts, while original CAS 413.50(c)(12) did not, is misplaced because original CAS 413 contained a "general applicability" section referring to subcontracts, while revised CAS 413 does not contain a "general applicability" section. In essence, they argue that this "flip-flop" in language from original to revised CAS 413 does not change the applicability of CAS 413.50(c)(12) to subcontracts.[9]

CBS, GM and Raytheon further rely on the 1970 and 1988 statutes that authorized the CAS Board and its implementing regula-

8. Raytheon contends that its interpretation of the treatment of subcontract costs under original CAS 413 is consistent with other Cost Accounting Standards which provide for an adjustment of previously determined costs. For example, Raytheon contends that CAS 409, which governs the depreciation of capital assets, requires only an accounting adjustment (i.e., a credit to the appropriate indirect cost pool in the year of the disposition), and that whether the credit will have any affect on the payment obligations of the parties depends upon the terms and conditions of the contracts and subcontracts to which the credit is allocated.

9. CBS further argues that other CAS regulations make clear that CAS 413 applies to subcontracts as well as contracts. These regulations (implementing both the 1970 and 1988 CAS statutes) include: (1) the definition of a CAS "covered contract" to be "any negotiated national defense prime contract or subcontract which pursuant to requirements of the Cost Accounting Standards Board is required to include a Cost Accounting Standards clause ...", 4 C.F.R. § 331.20(h) (1988); *see also* 48 C.F.R. § 30.301(1988) (also refers to subcontracts in the definition of a "CAS covered contract"); (2) CAS regulations related to the requirement that "all negotiated defense contracts" above a stated monetary threshold include a CAS clause except for "any contract or subcontract" falling within a certain exemption, 4 C.F.R. §§ 331.30 and .50 (1982), 48 C.F.R. § 30.202–1(b) (1988); and (3) the requirement that the monetary threshold for filing a CAS Disclosure Statement include subcontract awards, 4 C.F.R. § 351.40 (1982); *see also* 48 C.F.R. § 30.202–1(b) (1988).

tions. The initial 1970 CAS statute provided as follows:

> The Board shall from time to time promulgate cost-accounting standards designed to achieve uniformity and consistency in the cost-accounting principles followed by defense contractors and *subcontractors* under federal contracts. Such promulgated standards shall be used by all relevant Federal agencies and by defense contractors and *subcontractors* in estimating, accumulating and reporting costs in connection with the pricing, administration and *settlement* of all negotiated prime contract and *subcontract* national defense procurements with the United States in excess of $100,000 ...

50 U.S.C. app. § 2168(g) (repealed 1988) (1970) (emphasis added). The 1988 statute reauthorizing the CAS Board and its implementing regulations provides as follows:

> Cost accounting standards promulgated under this [statute] shall be mandatory for use by all executive agencies and by contractors and *subcontractors* in estimating, accumulating and reporting costs in connection with pricing and administration of, and *settlement* of disputes concerning, all negotiated prime contracts and *subcontract* procurements with the United States in excess of $500,000.

41 U.S.C. § 422(f)(2)(A) (1988) (emphasis added). CBS, GM and Raytheon argue that these statutory provisions demonstrate that the original CAS standards applied to subcontracts.

Second, CBS, GM and Raytheon argue that this court's decisions in *Teledyne* and in other CAS-related cases implicitly include pension costs allocated to subcontracts in the segment-closing adjustment under original CAS 413. GM and Raytheon argue that the nature of the segment-closing adjustment under CAS 413—as being at the *segment* level rather than adjustments to individual contracts or subcontracts—necessarily includes pension costs allocated to subcontracts. For this proposition, GM and Raytheon rely, among other things, on this court's decisions

in *Viacom,* 70 Fed.Cl. at 661 ("[T]he CAS 413 segment-closing adjustment is not an adjustment with regard to any individual contract" but rather "calls for a composite calculation that involves many contracts."), and *General Motors Corp. v. United States,* 66 Fed.Cl. 153, 160 (2005) ("The CAS 413 adjustment ... is not an adjustment attributable to any individual contract.... The CAS 413 adjustment is an adjustment of 'previously determined' pension costs for the entire segment."). Because the segment-closing adjustment is not to individual contracts and subcontracts, GM and Raytheon argue, the lack of privity between the government and a subcontractor is not a bar to the inclusion of subcontract costs.[10]

Third, Raytheon argues that the government's July 23, 2004 guidance document implementing *Teledyne* expressly includes subcontract pension costs in computing the amount of the government's share under both original and revised CAS 413. The document, issued jointly by the Defense Contract Management Agency ("DCMA") and the Defense Contract Audit Agency ("DCAA") in coordination with the Department of Justice, provides guidance "on the calculation of the Government's share of CAS 413.50(c)(12) segment closing adjustments." Raytheon's Brief Exhibit 1 ("DCMA/DCAA Joint Guidance"). Under "Calculation Steps and Examples," the document states: "Determine the total costs allocated to all contracts and *subcontracts* subject to the requirements of CAS 413 ... from the date the contractor had to follow *original CAS 413* until the date of segment closing." Attachment to DCMA/DCAA Joint Guidance at 1 (emphasis added). The document similarly includes "Costs Allocated to All Contracts Subject to CAS 413 Requirements (1979–2001)" and defines "CAS 413 contracts" as "CAS covered contracts and subcontracts as well as non CAS-covered contracts and subcontracts subject to FAR 31.205–6(j)(1)." *Id.* at 7. While the document's calculations subtract the "Costs Allocated to FFP [firm fixed price] Contracts with Original CAS 413," *id.,*

---

**10.** Raytheon further argues that because the court did not expressly *exclude* subcontract pension costs from the pension surplus that was

subject to adjustment in *Teledyne,* the result is that subcontract pension costs were included.

they do not subtract any costs attributable to subcontracts entered into under original CAS 413.

## 2. The Government's Arguments

In response to the arguments of CBS, GM and Raytheon, the government argues that original CAS 413 did not provide for the recovery of pension costs attributable to a closed segment's subcontracts because there was no privity of contract between the government and the subcontractor. The government argues that the well-established rule that the government has no privity with a government's contractor's subcontractors was the underlying understanding when the original CAS Board promulgated original CAS 413. The government asserts that the CAS Board's "Restatement of Objectives, Policies, and Concepts" specifically disavowed any intent to change the contractual relationships of the parties to government contracts. 42 Fed.Reg. 25751 (May 19, 1977). The government relies on *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed.Cir.1983), for the proposition that the government is not liable to a subcontractor for amounts that a prime contractor owes to a subcontractor. The government argues that it is the prime contractor, and not the government, that has the contractual obligation under the terms of the subcontract to correct for any past under– or over-contribution to the subcontractor's pension fund with respect to this particular subcontract. The government argues that, with the exception of revised CAS 413 (which was promulgated by a newly constituted CAS Board after the original CAS Board had ceased to exist in 1980), no CAS provision has required the recovery from or by the government of

an adjustment of costs that the contractor had previously allocated to its subcontracts.[11]

With regard to CBS' reliance on the statutory and regulatory provisions that refer to the application of CAS to subcontracts, the government argues that there is no dispute that original CAS 413 applies to subcontracts. The government argues, however, that the issue here is whether original CAS 413.50(c)(12) allows for *recovery* of the portion of the closed segment's pension surplus or deficit that was attributable to its subcontracts. The government argues that the lack of an explicit provision for the recovery of pension costs attributable to subcontracts in original CAS 413 means that it provided for no such recovery.

With regard to the court's decision in *Teledyne*, the government argues that this court held that the terms and conditions of a contract determine whether a segment-closing adjustment is recoverable. Therefore, the government argues, just as the court held in *Teledyne* that under original CAS 413 the government cannot be required to pay for increased pension costs due to a firm-fixed-price contract, 50 Fed.Cl. at 178, so too, the government cannot be required to pay for an increased price for a subcontract because the government lacks privity with a subcontractor under the terms of a subcontract.[12] The government also relies on *Teledyne* for the proposition that the purpose of the original CAS 413 segment-closing provision "is to look back and determine whether the *government* over contributed or under contributed to the segment's pension plan." 50 Fed.Cl. at 181 (emphasis added). The government argues that, with a subcontract's pension costs, the government did not make these contributions.

11. The government does not address Raytheon's argument that the CAS 413 settling up under the segment-closing adjustment provision is similar to the approach taken in FAR Part 30, which requires that equitable adjustments required by the CAS clause include the cost impact on all of the contractor's CAS-covered contracts and subcontracts.

12. In *Teledyne*, this court held that original CAS 413 did not provide for the recovery of a surplus or deficit attributable to fixed-price contracts, but that such recovery depended on the terms of the

contracts under which the pension costs were paid. This court held, in pertinent part, as follows:

Whether any allocable portion of the CAS 413.50(c)(12) adjustment is recoverable depends on the contract terms under which the pension costs were paid. Absent a specific contract provision, the surplus or deficit attributable to government contributions under firm-fixed price contracts is not recoverable. 50 Fed.Cl. at 191.

Finally, in response to the argument regarding the DCMA/DCAA Joint Guidance, the government contends that the document does not contain any discussion or analysis that supports inclusion of subcontracts, but that the document includes only some hypothetical calculations. The government argues that, since revised CAS 413 includes pension costs attributable to subcontracts, the document included subcontracts in the hypothetical calculations without ever focusing on whether recovery related to such contributions was allowed under original CAS 413. The government argues that this inadvertent inclusion of subcontract costs in the document's calculations does not represent a considered conclusion by the government.

### 3. Analysis

Although the issue is not free from doubt, the court is persuaded that the segment closing adjustment contemplated under original CAS 413.50(c)(12) includes an adjustment of pension costs attributable to the segment's flexibly-priced subcontracts and that this adjustment would have been included in the recoverable amount. Therefore, the inclusion of subcontract pension costs in revised CAS 413.50(c)(12), which expressly authorizes recovery for subcontract costs, was not a change from original CAS 413. In its initial decision, the court reasoned that the inclusion of subcontracts was a change because subcontracts were expressly mentioned in revised CAS 413 but had not been mentioned in the original CAS 413 segment-closing provision, and because the pension costs had not been paid directly by the government. 70 Fed.Cl. at 659. Underlying the court's reasoning was the understanding that subcontracts were similar to fixed priced contracts and that, absent an express mention of subcontracts in original CAS 413, there would not be any basis for concluding that pension costs attributable to subcontracts would be recoverable in an original CAS 413 segment-closing adjustment.

Upon reconsideration, the court finds that the comparison of pension costs attributable to fixed price contracts and pension costs attributable to flexibly-priced subcontracts was not appropriate. In contrast to fixed price contracts where there was no basis for any adjustment, the court finds that flexibly-priced subcontracts were potentially subject to a CAS 413 segment-closing adjustment. Because the CAS rules applicable to subcontractors are the same as the rules applicable to prime contractors, subcontractors would have understood that their pension costs attributable to flexibly-priced subcontracts could be subject to adjustment when there was a segment-closing adjustment and that these costs would be part of a final cost adjustment. In this connection, the court notes that the original CAS Board did not differentiate between the treatment of subcontracts and prime contracts and expected that the rules applicable to one would also apply to the other. The language of the statutes authorizing the CAS Board and the CAS regulations make it clear that costs attributable to subcontracts and prime contracts should be treated the same. 50 U.S.C. app. § 2168(g) (repealed); 41 U.S.C. § 422(f)(2)(A) (1988). Therefore a contractor could have expected that a segment closing under original CAS 413 would include "adjustments" to "previously determined pension costs" of both flexibly-priced prime contracts and subcontracts because the costs attributable to flexibly-priced contracts are subject to adjustment. Accordingly, the contracting parties would have understood that pension costs attributable to flexibly-priced subcontracts that were administered by a segment could be included and would have been recoverable as part of the original CAS 413 segment-closing adjustment.[13]

---

13. The government's contention that recovery of pension costs attributable to subcontracts was not contemplated in the original CAS 413 segment-closing adjustment because the government lacks "privity" with subcontractors is unfounded. As the plaintiff correctly notes, a segment-closing adjustment is not an adjustment of any individual contract, but is a composite adjustment of many contracts, including subcontracts. *See Viacom,*

70 Fed.Cl. at 661; *General Motors,* 66 Fed.Cl. at 160. Therefore, privity is not an issue. Moreover, because subcontractors had to have agreed to abide by CAS 413, they were on notice that, in the event of a segment closing, the pension costs paid by the government under cost type contracts, either directly or indirectly, would be subject to adjustment.

This view is consistent with the regulatory history of revised CAS 413, which included several references to the fact that the inclusion and recovery of pension costs attributable to firm fixed price contracts in a CAS 413 segment-closing adjustment was new, but did not include any suggestion that the inclusion and recovery pension costs attributable to subcontracts in the closing adjustment was new. For example, the preamble to revised CAS 413 notes, "Five commenters opposed the inclusion of fixed–price contracts in any formula used to determine the Government's share [of the adjustment]." In *Teledyne* the court found that these comments demonstrated that the inclusion and recovery of pension costs from fixed price contracts in revised CAS 413 represented a change from original CAS 413, 50 Fed.Cl. at 177–178, which, as a change in accounting practices, triggered the right to an equitable adjustment, *id.* at 191–192. In contrast to fixed price contracts, the regulatory history of revised CAS 413 does not include any mention of subcontracts. This silence strongly suggests that the inclusion and recovery of pension costs attributable to subcontracts in the revised CAS 413 segment-closing adjustment was not viewed as a change by either the CAS Board or the public.

Indeed, the government itself took this same position when the DCMA and DCCA wrote their guidance for a segment closing under CAS 413 following the *Teledyne* decision. The DCMA/DCAA Joint Guidance expressly includes pension costs attributable to both cost-type contracts and subcontracts, without limitation. The discussion section of the document provides, in pertinent part: "Regardless of whether there is a surplus or a deficit, the numerator is the same: the sum of all pension costs allocated to contracts and *subcontracts* subject to the CAS 413 requirements during the same period of time covered by the denominator." DCMA/DCAA Joint Guidance at 4 (emphasis added). The document also contains numerous sample calculations which include costs attributable to subcontracts, without differentiating between those entered into under original or revised CAS 413. Specific to original CAS 413, the document provides the following calculations:

The numerator of the fraction for determining the Government's share of the segment closing surplus for the *pre-revised CAS 413 period* equals the total pension costs allocated to cost-type contracts and *subcontracts* subject to the requirements of CAS 413 ... *from the date the contractor first had to follow original CAS 413* until the date the contractor first had to follow revised CAS 413.

Attachment to DCMA/DCAA Joint Guidance at 1 (emphasis added). The inclusion of pension costs attributable to subcontracts "from the date the contractor first had to follow original CAS 413," *id.*, demonstrates that the defense audit agencies assumed that the original CAS 413 adjustment contemplated recovery, without limitation, of pension costs attributable to subcontracts under original CAS 413. The defense audit agencies made this assumption with respect to subcontracts after the court's holding in *Teledyne* with respect to fixed-price contracts. Therefore, the defense audit agencies knew that an equitable adjustment would be required where the segment-closing adjustment under revised CAS 413 included pension costs that were not recoverable under the segment-closing provision in original CAS 413; however, no mention is made of an equitable adjustment with regard to subcontracts entered into under original CAS 413. While the court is not bound by the DCMA/DCAA guidance document in construing the CAS Board's intent, *see Perry v. Martin Marietta Corp.,* 47 F.3d 1134, 1137 (Fed.Cir.1995), the court finds this document presents persuasive evidence that both the government and its contractors expected that pension costs attributable to cost type subcontracts entered into under original CAS 413 would be included in the recovery authorized under revised CAS 413 without any need for an equitable adjustment.

For all of these reasons, the court concludes that the inclusion of pension costs attributable to flexibly-priced subcontracts in the segment-closing adjustment under revised CAS 413.50(c)(12) is not a change from original CAS 413. As such, the government is not entitled to an equitable adjustment under 48 C.F.R. § 52.230–2(a)(4)(i) where revised CAS 413.50(c)(12) includes costs attrib-

utable to flexibly-priced subcontracts entered into under original CAS 413.

## II.  CONCLUSION

Based on the foregoing discussion, CBS' motion for reconsideration is **GRANTED.**

**IT IS SO ORDERED.**